IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ABDIFATAH FARAH,

                Plaintiff,

        v.                                          No. 12-2692-SAC


A-1 CAREERS and
CENTRINEX, LLC,

                Defendants.


MEMORANDUM AND ORDER

        This case of religious discrimination comes before the Court on

Defendants' motion for summary judgment. The primary dispute is whether,

during Plaintiff's less than one month employment, Defendants reasonably

accommodated Plaintiff's Islamic religious practice of praying at noon or

discriminated against him for that practice.

## I. Summary Judgment Standard

        "[S]ummary judgment is appropriate 'if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'" *Morris v. City of Colo. Springs*, 666 F.3d 654,

660 (10th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). In assessing a motion

for summary judgment, "[w]e view the facts, and all reasonable inferences

those facts support, in the light most favorable to the nonmoving party."

*Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).

The Court must examine the record to determine whether any genuine issue of material fact is in dispute. If the record shows none, the Court determines the correct application of the substantive law, and in so doing examines the factual record and reasonable inferences from the record in the light most favorable to the party opposing the motion. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 731 F.3d 1106 (10th Cir. Oct. 1, 2013).

## II. Undisputed Facts

A-1 Careers, a temporary staffing agency, hired Plaintiff on June 8, 2010 and placed him at Centrinex,[1] where he worked through July 2, 2010. Plaintiff was the only Muslim employee. Plaintiff worked at Centrinex's principal place of business in Overland Park, Kansas. Centrinex employees had two fifteen-minute breaks plus one hour for lunch each day and were permitted to use the restroom anytime they needed to.

### Plaintiff's Religious Practices

Plaintiff practices the religion of Islam and has a sincerely-held religious belief that he is required to perform prayer rituals five times a day: in the morning, around noon, in late afternoon, at dusk, and at night. During his employment with Defendants, plaintiff conducted all prayers but the noon prayer at his home, approximately 20-25 minutes from the Centrinex offices, or at some place other than work. Muslims are prohibited from

---

[1] The parties stipulate in the pretrial order that both Defendants were Plaintiff's employers under Title VII. Dk. 34, p.3. For purposes of this motion, the Court accepts that stipulation. See generally *Zinn v. McKune,* 143 F.3d 1353, 1361 (10th Cir. 1998) (concurring opinion) (under Title VII two separate entities may be the employer if they share or co-determine matters governing the worker's essential terms and conditions of employment).

performing their prayers in filthy or unsanitary conditions, or where they would inhibit people from coming and going, or where they would bother other people or endanger the person praying. Prayers are to be performed peacefully as a humble and private experience.

The only prayer that Plaintiff routinely conducted during work hours was the prayer done around the noon hour, its exact time varying depending on the position of the sun. This prayer averages between seven and ten minutes. During his prayers, Plaintiff used a prayer mat that was approximately 4 feet by 2 feet. He said his prayers silently while at various times standing, sitting, kneeling, or laying prostrate on his mat.

On most Fridays, Plaintiff combined his one-hour lunch break with his 15-minute afternoon break so he could drive to a mosque approximately 30 minutes away, attend at least part of a 10 to 30 minute worship and prayer service, and return to work. Plaintiff would ask the lady who sat next to him and a "fit lady" who was in the office for permission to do so on Fridays, and it was never denied. But the record does not reveal who at Centrinex granted Plaintiff permission to do so or who was aware that he did so.

**Centrinex's Office**

Centrinex leased part of a six-story building whose main floor had a common lobby serving all tenants and their visitors. When Plaintiff first started working there, he asked a coworker who supervised his work whether there was some place to pray, and she told him he could use the

3

lobby. Thereafter, without asking any of Defendant's managers for permission, Plaintiff conducted his noon prayers in the lobby, which was all glass. During the time Plaintiff prayed in the lobby, several other people went through the lobby to the doors or elevators, and could see Plaintiff praying there. Plaintiff did not consider his prayers to be disruptive but did not care if they made others uncomfortable.

### Initial Complaints About Plaintiff's Prayers

Sometime in mid-to-late June, the property manager of the building in which Centrinex leased office space contacted Centrinex. She told Centrinex's H.R. Director, Cathy Evers, that Plaintiff was praying in the lobby and that other tenants and their visitors had objected to his praying there. Centrinex then contacted A-1 Careers and informed Ms. Caughron that Plaintiff was praying in the lobby of the main entrance to the building and had disrupted other employees and that employees had complained. She asked A-1 to visit with Plaintiff about the matter.

### A-1's First Suggested Accommodations

Ms. Caughron of A-1 Careers called Plaintiff on the telephone on June 29, 2010, related complaints to him, and told him Centrinex felt it was disruptive for him to pray as he had been praying. She offered Plaintiff several options at the time: to pray in his car, or outside, or at a mosque.

When Ms. Caughron asked Plaintiff whether he could pray in his car, Plaintiff responded that he could not because his prayer ritual requires him to do lots of movements which one cannot do in a car.

Ms. Caughron asked Plaintiff if he could pray outside. The building in which Centrinex leased space was surrounded by a manicured landscaped area and had many places sheltered from the rain. During Plaintiff's employment at Centrinex the temperature averaged between 75 and 77 degrees, and very few working days had any precipitation. Plaintiff had prayed outside once before but "didn't like it," and told her he could not pray outside due to sanitary reasons. Plaintiff felt the area outside the building was filthy and unsanitary and he did not want to be out in the elements.

Ms. Caughron then asked if Plaintiff could go to a place of worship to pray. The parties agree that there were a lot of places for prayer off-site, but the closest mosque was about 30 minutes away. Plaintiff responded by saying, " I apologize. Again, if I do that, I'm going to be late and I don't want that to reflect negatively on me."  Dk. 36, Exh. 2, p. 98. Plaintiff did not ask her if he could take additional time at lunch and make it up at the end of the day, did not ask her if he could combine his afternoon break with his lunch hour and pray off-site as he did on Fridays, and did not tell her that Centrinex permitted him to be late on Fridays by combining his lunch hour with his afternoon break so he could go to a mosque. Instead, Plaintiff asked Ms. Caughron, "would you take responsibility for me if ... I came in

late?" Dk. 36, Exh. 2, p. 98. She said no, but told him she would contact the owner of Centrinex and get back to him.

**Centrinex's Suggested Accommodations**

Soon thereafter, Plaintiff initiated a conversation with Centrinex's H.R. Director Evers about the matter. He told her that A-1 had called him and had said some people might have been offended by his prayers in the lobby. Plaintiff asked her whether there was any space in the building where he could pray. Ms. Evers responded that there was none. Ms. Evers then suggested that Plaintiff conduct his noon prayers outside the office building in the courtyard, in his car, or off-site.

Plaintiff told Ms. Evers he could not conduct his noon prayers in his car because he cannot stand up, which constitutes part of his routine prayer ritual. And Plaintiff told her that praying outside the building or in a local park was not an option because he couldn't be out in the elements. But Plaintiff did not respond to Ms. Evers' suggestion that he conduct his noon prayers off-site.

**Plaintiff's Suggested Accommodations**

Instead, Plaintiff counteroffered to pray in the H.R. Director's private office. Ms. Evers rejected this idea because she regularly occupied her office, people were coming and going in and out of it all day, and she had confidential files all over her office.

Plaintiff also asked to pray outside Ms. Evers' office in the hallway, but Ms. Evers declined, believing that the only space there was a walkway and that Plaintiff would have impeded the flow of people who needed to use that hallway to move around the area to work. Plaintiff does not think his praying there would have done so.

Plaintiff also asked Ms. Evers about using an office that he thought was not used all the time on the fifth floor, where some Centrinex managers were officed. But Ms. Evers told him none was available. At the time, Centrinex used all of the space it leased in the building, and relocated to larger offices shortly after plaintiff left. Centrinex had no legal ability to give Plaintiff permission to use the building space occupied by other companies or the building's common areas, such as the lobby.

Plaintiff did not ask Ms. Evers whether he could take additional time at lunch to travel to a mosque or other off-site location on days other than Fridays. Plaintiff knew that other employees sometimes ate lunch at their desks, and that Defendants permitted him to travel off-site and take a longer lunch break for prayer services on Fridays. But the record does not reflect that Ms. Evers knew that Plaintiff traveled off-site and take a longer lunch break for prayer services on Fridays. Had Plaintiff requested additional time at lunch to travel to an off-site location for his noon prayers on days other than Fridays, Ms. Evers would have granted that request.

After his conversation with Ms. Evers, Plaintiff consulted the same two persons who he considered to be his work supervisors (the lady who sat next to him and the "fit lady") what to do. They told him "off the record" that if they were he they would continue to pray in the lobby. Plaintiff thereafter conducted his noon prayers in the lobby, as he had before he had been informed of any complaints. Ms. Evers saw Plaintiff praying in the lobby and contacted A-1.

### A-1's Second Suggested Accommodations

On July 1st or 2nd, 2010, Managing Director Battaglia of A-1 Careers visited Plaintiff at Centrinex's office about the matter. She asked Plaintiff if he could pray in his car or outside or elsewhere. Plaintiff gave Ms. Barraglia the same responses he had given to Ms. Evers. Plaintiff said he had asked Ms. Evers for a place to pray and was told there was nowhere he could pray inside the building, and asked Ms. Battaglia if she could find him a place to pray.

### The Warning Letter

Ms. Battaglia told Plaintiff she had a warning letter for him to sign, and presented a written warning which stated:

> This letter is a verbal (sic) clarification on conversation you had with Lani Caughron on June 29th. It is the company policy of A-1 Careers that NO public demonstration or activity can occur on clients (sic) property. Personal convictions are respected and honored, however it (sic) must not be displayed as an interruption of the workplace and client environment.
>
> Let this serve as final confirmation and it will not be tolerated.

Dk. 36, Exh. 3, 00124. Plaintiff refused to sign the letter. Ms. Battaglia responded that Plaintiff could not continue to work there unless he signed the letter and complied with it. Plaintiff responded that he could not do so. Ms. Battaglia then added the following language to the letter:

> In Recognition Abdi Farrah (sic) has voluntarily resign (sic) on Friday, July 2nd, 2010.

*Id*. Plaintiff signed the letter and did not return to work after lunch to finish his shift. Plaintiff sought and found other employment and began a new job on July 8, 2010, so was out of work for three days.

**This Lawsuit**

Plaintiff, having exhausted his administrative remedies, brings this suit under Title VII alleging religious discrimination. Plaintiff brings a disparate treatment claim and a failure to accommodate claim.

**III. Failure to Accommodate**

In failure to accommodate claims in which no direct evidence of discrimination is shown, the Court applies a version of the burden-shifting approach *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Thomas v. National Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000). To survive summary judgment, "the employee initially bears the burden of production with respect to a prima facie case." *Thomas*, 225 F.3d at 1155.

A prima facie case of failure to accommodate one's religion requires the employee to "show that (1) he or she had a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed his or her employer of this belief; and (3) he or she was fired … for failure to comply with the conflicting employment requirement." *Id.* (emphasis added). *Abercrombie*, 731 F.3d at 1122, quoting *Thomas*, 225 F.3d at 1155.

If Plaintiff makes a prima facie case, the burden then shifts to the employer to (1) conclusively rebut one or more elements of the plaintiff's prima facie case, (2) show that it offered a reasonable accommodation, or (3) show that it was unable reasonably to accommodate the employee's religious needs without undue hardship. *Thomas*, 225 F.3d at 1156; *Abercrombie*, 731 F.3d at 1122.

The purpose of the burden-shifting mechanism in failure to accommodate claims differs from its purpose in disparate treatment claims. Here, the Court uses the burden-shifting mechanism as a means by which to determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered. *See Thomas*, p. 1155, n. 6.

**Application**

Defendants admit that Plaintiff had a bona fide religious belief that he was required to conduct noon prayers. They deny that Plaintiff has shown

that his religious practice conflicted with any employment requirement. But viewing the facts in the light most favorable to the Plaintiff, the Court finds the neutral workplace rule that Plaintiff not pray in the lobby sufficient to meet this element for purposes of this motion. It is undisputed that after being informed of this requirement, Plaintiff informed his employer of his religious belief and of the conflict.

The crucial issue is whether Plaintiff was fired for failing to comply with the conflicting employment requirement. Plaintiff contends that this element is met because he was constructively discharged. Proof of constructive discharge may constitute an adverse employment action under Title VII. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008).

The Court finds that the Plaintiff was not constructively discharged, as explained below in addressing Plaintiff's disparate treatment claim. But even if one assumes, for purposes of this claim, that Plaintiff *was* constructively discharged, his failure to accommodate claim fails because the facts conclusively show that Defendants offered a reasonable accommodation, or that Defendants were unable reasonably to accommodate Plaintiff's religious needs without undue hardship.

### Offers of Reasonable Accommodation

As the Tenth Circuit noted suggested in *Thomas*, Title VII's "interactive process . . . requires participation by both the employer and the employee."

225 F.3d at 1155." *Abercrombie*, 731 F.2d at 1121. Title VII's religious

accommodation requirement, like the ADA's accommodation clause,

> involves an interactive process that requires participation by both the employer and the employee. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business") (internal quotations and citations omitted); *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987) ("Although the burden is on the employer to accommodate the employee's religious needs, the employee must make some effort to cooperate with an employer's attempt at accommodation."); *cf. Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171–72 (10th Cir. 1999) (en banc) (discussing the interactive process between an employer and an employee under the ADA).[FN5]

*Thomas*, 225 F.3d at 1155.

"A reasonable religious accommodation is any adjustment to the work

environment that will allow the employee to comply with his or her religious

beliefs." 12-IV REASONABLE ACCOMMODATION  EEOCCM s 12-IV.

> An accommodation is not "reasonable" if it merely lessens rather than eliminates the conflict between religion and work, provided eliminating the conflict would not impose an undue hardship. Eliminating the conflict between a work rule and an employee's religious belief, practice, or observance means accommodating the employee without unnecessarily disadvantaging the employee's terms, conditions, or privileges of employment.

*Id.* Determining whether an employer has offered a reasonable religious

accommodation is a fact-specific inquiry. *See e.g., Thomas*, 225 F.3d at

1154 -1157; *Weber v. Leaseway Dedicated Logistics, Inc.*, 1999 WL 5111, 1

(10th Cir. 1999); *Lee v. ABF Freight System, Inc.*, 22 F.3d 1019 (10th Cir. 1994); *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1483 (10th Cir. 1989*)*.

The undisputed facts of this case show that the Plaintiff and the Defendants engaged in an interactive process about Plaintiff's noon prayers on several occasions. Defendants thoroughly explored the alternatives and made specific suggestions that they thought might meet both the Plaintiff's religious needs and its neutral work requirements. Three times Defendants offered in good faith, among other options, to permit Plaintiff to go off-site for his noon prayers. Defendants already permitted Plaintiff to take extra time at lunch to go to a mosque to pray at noon on Fridays, demonstrating that this solution was workable for both Plaintiff and Defendants. Nothing contradicts Defendants' testimony that it would have permitted Plaintiff to combine his lunch and break time other days of the week, as well. The Court finds from the undisputed facts that Defendants thus offered a reasonable accommodation.

Plaintiff contends that he "did ask for permission for extra time to return from break at the time and that was denied." Dk. 37. p. 25. By this, Plaintiff refers to A-One's initial suggestion that Plaintiff go to a mosque to pray, to Plaintiff's response that he didn't want to be late or have that reflect negatively on him, and to Plaintiff's request that Ms. Caughron "take responsibility for him" if he came in late, which she declined to do. But Plaintiff did not ask her if he could take additional time at lunch and make it

up at the end of the day, or ask her if he could combine his lunch break with his afternoon break, or tell her that Centrinex permitted him to do that very thing on Fridays so he could attend services at a mosque. No facts suggest that Ms. Caughron was even aware of the accommodation Centrinex made for Plaintiff's Friday noon prayers. Plaintiff, who was aware of the Friday accommodation, curiously did not suggest the same arrangement to Ms. Caughron. Plaintiff's vague request that A-One "take responsibility for him" if he were late does not create a material question of fact or raise any inference that A-One refused to permit him to go off-site for his noon prayers or refused to let him have the same arrangement on Mondays through Thursdays that he had on Fridays.

Plaintiff also contends that a fact question is created because Defendants never said they would have given Plaintiff additional time to go off-site to pray, until Ms. Evers said so in her affidavit in support of Defendant's summary judgment motion. Dk. 37, p. 25. That affidavit states in relevant part: "had plaintiff requested additional time to travel to an off-site location on days other than Fridays when he already did that for prayer which was approved, his request would have been granted." Dk. 36, Exh. 1, p. 2. Plaintiff does not allege this is a sham affidavit but alludes to this as a "post-hoc reason" which creates a question of fact, citing *Plotke v. White*, 405 F.3d 1092 (19th Cir. 2005). But *Plotke* addressed fabrication of a document after a party represented no such documentation existed, so is

inapplicable here. Plaintiff has not shown any conflict between Defendants' sworn testimony and Ms. Evers' subsequent affidavit which could cast doubt on her credibility. Her affidavit is uncontradicted by the record.

Plaintiff has not shown that Ms. Evers was aware at the time she offered Plaintiff accommodations for his noon prayers that Plaintiff took additional time to go off-site to pray on Fridays. But Plaintiff was undeniably aware, yet did not suggest that accommodation.

Defendants reasonably accommodated Plaintiff's religious beliefs by offering to let him go off-site daily for his noon prayers. Accordingly, Defendants were not required to consider other proposals and need not show that Plaintiff's alternative proposals would result in undue hardship. *See Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) ("By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation…. Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end."); *Thomas*, 225 F.3d p. 1156 n. 7.

### Undue Hardship, Generally

The Court thus finds it unnecessary to reach Defendants' arguments that they were unable to accommodate Plaintiff's religious practice of praying at noon, without undue hardship. But assuming, arguendo, the need

to do so, the Court finds undue hardship is an independent reason to grant

Defendants summary judgment.

"Religion does not exist in a vacuum in the workplace," but "coexists

… with the intensely secular pressures of the marketplace." *EEOC v.*

*Firestone Fibers & Textiles Co.,* 515 F.3d 307, 313 (4th Cir. 2008).

> On the one hand, the principal goal of Title VII is to eliminate
> discrimination in employment. On the other hand, Congress recognized
> that because of business necessity and the legitimate rights of other
> employees, it could not impose a duty on the employer to
> accommodate at all costs.

*Id.* (citations and quotation marks omitted); *See Ansonia Bd. of Educ.,* 479

U.S. at 70.

Title VII's religious accommodation requirement is less demanding

than the accommodation requirement in the ADA, which defines "undue

hardship" as "an action requiring significant difficulty or expense," when

considered in light of several statutorily enumerated factors. 42 U.S.C. §

12111(10)(A). *See* 1990 U.S.C.C.A.N. at 350 (House Report on ADA). Undue

hardship is not defined in Title VII, so the precise reach of the employer's

obligation must be determined on a case-by-case basis. *See United States v.*

*City of Albuquerque,* 545 F.2d 110, 114 (10th Cir. 1976), *cert. denied,* 433

U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1977). The Supreme Court has

narrowly interpreted Title VII's duty to make reasonable accommodations,

holding that any accommodation imposing "more than a de minimis cost" to

the employer amounts to an undue hardship. *TWA v. Hardison*, 432 U.S. 63, 84, 97 S.Ct. at 2276 (1977).

Thus in this case, any cost in efficiency or wage expenditure that is more than *de minimis* constitutes undue hardship. *See Lee*, 22 F.3d at 1023. Undue hardship need not be measured solely in monetary expenditures. *De minimis* cost "entails not only monetary concerns, but also the employer's burden in conducting its business." *Beadle v. City of Tampa,* 42 F.3d 633, 636 (11th Cir. 1995), *cert. denied,* 515 U.S. 1152, 115 S.Ct. 2600, 132 L.Ed.2d 846 (1995).

> To determine whether allowing or continuing to permit an employee to pray, proselytize, or engage in other forms of religiously oriented expression in the workplace would pose an undue hardship, employers should consider the potential disruption, if any, that will be posed by permitting this expression of religious belief. ... relevant considerations may include the effect such expression has had, or can reasonably be expected to have, if permitted to continue, on co-workers, customers, or business operations.

12-IV REASONABLE ACCOMMODATION  EEOCCM s 12-IV. Disruption is thus a valid factor in determining undue hardship. But the hardship asserted by the Defendant must be real and not merely speculative, and cannot be proved by assumptions or opinions based on hypothetical facts. *Brown v. Polk County, Iowa*, 61 F.3d 650, 655 (8th Cir. 1995).

## Undue Hardship to Defendants

Plaintiff counteroffered to pray at various locations in the building in which Centrinex leased space, but Defendants rejected those suggestions. Defendants assert that each of them would have caused undue hardship.

Plaintiff's suggestion that he conduct his daily noon prayers in the office of Centrinex's H.R. director was unworkable because she routinely used her office, others were going in and out of it all day long, and it housed confidential documents. Permitting Plaintiff to pray in Ms. Evers' office while she was there would be disruptive to her work. Requiring Ms. Evers to leave her own office so Plaintiff could pray in it would also work an undue hardship because it would not only deprive her of the benefit of having her own office but would also leave an employee in her office unattended, posing a risk of a breach of confidentiality. In short, Plaintiff's suggestion was most unreasonable.

Plaintiff's suggestion that he use the space outside Ms. Evers' office was also rejected because Ms. Evers believed that Plaintiff would have impeded the flow of personnel in the workspace had he prayed there. Ms. Battaglia also volunteered that "the way the building is structured, literally you can't [pray] in the hallway even, because … it's still disrupting the work. There was nowhere to do that." Dk. 36, Ex. 4, p. 12. Such a disruption would constitute undue hardship.

 Plaintiff does not think his praying there would have impeded traffic, but this testimony provides only opinion, conclusion, or conjecture, not specific grounds or facts to create a conflict of fact or to support a claim of pretext. Had Plaintiff showed that the hallway was twice as wide as his prayer mat or established other facts supporting some inference that the

flow of foot traffic around him would not have been impeded, a conflict between the testimony would arise. Instead, Plaintiff testified that there was "a little bit of space" there and when asked how big it was replied, "I can't remember." When asked to estimate footage, Plaintiff took what he called "a wild guess" that it was "maybe two feet, three feet." Dk. 37, Farah Depo. p. 88-90. Since Plaintiff's prayer mat was approximately 4 feet by 2 feet, Plaintiff's testimony reaffirms rather than casts doubt on Ms. Ever's assessment that there was not enough room for Plaintiff to pray there without impeding the movement of employees. No material question of fact has been shown.

Plaintiff also asked Ms. Evers about using an office on the fifth floor that he thought was not used all the time. But Ms. Evers told him none was available. Defendant was in a better position than Plaintiff to know whether any area was regularly unused over the noon hour in the premises Centrinex leased on another floor, and Plaintiff presents no facts to contradict her testimony in this regard. Additionally, the Court does not substitute the speculation of an employee for the judgment of an employer, especially when the employee offers only a self-serving assessment in response to the employer's perspective. *See generally Branson v. Price River Coal Co.*, 853 F.2d 768 (10th Cir. 1988); *Kelley v. Goodyear Tire & Rubber Co.*, 45 F.Supp.2d 888, 892 (D.Kan. 1999). Here, as above, Plaintiff fails to offer any facts upon which a reasonable jury could conclude that there was space

available daily over the noon hour anywhere in the fifth floor space leased by Centrinex.

Plaintiff may have asked Defendants to find some other place in the building where he could pray, but it is undisputed that Defendants had received complaints from the building manager that Plaintiff's prayers in the lobby were disrupting others. Thus Plaintiff could not pray in the lobby without imposing an undue hardship on Defendants. And Defendants, as tenants in a multi-office building, had no legal authority to permit Plaintiff to pray in other common areas of the building. Requiring Defendants to lease additional space for the purpose of permitting Plaintiff to pray there would entail more than *de minimus* cost, constituting an undue hardship.

Defendants have thus shown that acceding to the accommodations requested by the Plaintiff would have caused them undue hardship. Based on the law and undisputed facts, Plaintiff's claim for failure to accommodate fails on this independent ground.

## IV. Intentional Discrimination

Plaintiff brings a separate claim of intentional discrimination under Title VII based on his alleged constructive termination. Plaintiff contends that he was given an ultimatum to quit praying in the building or be fired and, not wanting to forfeit his sincerely-held religious belief, he chose to quit. Plaintiff contends that a jury could find that a reasonable person would have had no option but to resign, under the circumstances he faced.

**Prima Facie Case**

Title VII prohibits an employer from discharging "any individual …
because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). "[A]ll
aspects of religious observance and practice, as well as belief" are protected.
42 U.S.C. § 2000e(j). Plaintiff lacks direct evidence of religious
discrimination, so must make a prima facie case by the burden-shifting
framework of *McDonnell Douglas Corp.*

> In a discriminatory discharge case, all a plaintiff must show is: (1) he
> belongs to a protected class; (2) he was qualified for his job; (3)
> despite his qualifications, he was discharged; and, (4) the job was not
> eliminated after his discharge. *English v. Colo. Dept. of Corrections,*
> 248 F.3d 1002, 1008 (10th Cir. 2001).

*Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1171 n. 5 (10th Cir. 2007).[2]

After a plaintiff has established a prima facie case, the burden "shift[s]
to the employer to articulate some legitimate, nondiscriminatory reason for
the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct.
1817. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). "If
the employer does so, the burden shifts back to the plaintiff to show that the
proffered reason is pretextual." *Zamora*, 478 F.3d at 1172.

With regard to Plaintiff's prima facie case, the parties dispute only
whether Plaintiff was "discharged." Plaintiff contends and Defendants dispute

---

[2] This standard is suitable for the present case, but not for a religious-discrimination claim
brought against members of a minority religion. *DeFreitas v. Horizon Inv. Management
Corp.*, 577 F.3d 1151, 1162 n. 3 (10th Cir. 2009). *See Shapolia v. Los Alamos Nat'l Lab.,*
992 F.2d 1033, 1038 (10th Cir. 1993).

that Plaintiff was constructively discharged, meeting this element.

## Constructive Discharge Requirements

> To prevail on a constructive discharge claim, a plaintiff must show either that (1) "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign," *Sanchez,* 164 F.3d at 534 (quotation omitted), or (2) the employer by its discriminatory actions forced the plaintiff to choose between resignation or termination, *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978 (10th Cir. 1996); *Acrey v. Am. Sheep Indus. Ass'n,* 981 F.2d 1569, 1573-74 (10th Cir. 1992).

*Hall v. U.S. Dept. of Labor, Admin. Review Bd.*, 476 F.3d 847, 860 - 861 (10th Cir. 2007). Plaintiff relies only on the first of these theories, contending that Defendants made his working conditions intolerable by forcing him to choose between his job and his religion. Dk. 37, p. 19.

If a threat to fire someone may amount to constructive discharge, then the threat must place the employee under duress, leaving him no option but to resign. *See James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992–993 (10th Cir. 1994); *Parker v. Board of Regents of Tulsa Jr. College,* 981 F.2d 1159, 1162 (10th Cir. 1992).

> The plaintiff's burden is substantial. The standard is objective: the employer's subjective intent and the employee's subjective views on the situation are irrelevant. Whether a constructive discharge occurred is a question of fact. 555 F.3d 1224, 1228 (10th Cir. 2009) (quotation and citations omitted). In considering whether a constructive discharge occurred, the court considers the totality of the circumstances. *Narotzky v. Natrona Cnty. Mem'l Hosp.,* 610 F.3d 558, 565 (10th Cir. 2010).

*Lockheed Martin Corp. v. Administrative Review Bd., U.S. Dept. of Labor*, 717 F.3d 1121, 1133 (10th Cir. 2013).

### No Intolerability

Construing the facts in the light most favorable to the Plaintiff, the Court finds that the ultimatum given to Plaintiff was to resign from his job or to agree to cease conducting his noon prayers *in the building*. Plaintiff was not asked to choose between his job and his First Amendment right to free exercise of religion. The totality of the circumstances does not demonstrate that Defendants attempted to make or actually made Plaintiff's working conditions intolerable. To the contrary, the evidence shows that Defendants offered to accommodate Plaintiff's religious practice by suggesting some means by which Plaintiff could continue his employment while continuing his noon prayers, albeit not in the building. Those accommodations, as discussed above, are reasonable as a matter of law.

But even if they were not, no reasonable trier of fact could conclude that Plaintiff's workplace was "intolerable" in light of Defendants' attempts to accommodate his religious beliefs. *See Nowlin v. K–Mart Corp.*, 232 F.3d 902, 2000 WL 1588116 (10th Cir. 2000) (finding summary judgment warranted because employer's efforts to accommodate employee's disability refuted claim of constructive discharge). *Johnson v. K-Mart Corp.*, 131 F.3d 134, 1997 WL 741368 (4th Cir. 1997) (employer's offer to allow employee to work before or after church services on Sunday defeated constructive discharge claim regardless of whether employer's offer was a reasonable accommodation under Title VII). A reasonable person in Plaintiff's position

would have chosen to pray in a location other than his work or to go to a mosque, as Plaintiff did on Fridays, rather than to find Defendant's suggestion that he pray off-site so intolerable that he had no alternative but to quit. Because Plaintiff has not shown that he was constructively discharged, he fails to make a prima facie case of disparate treatment.

Nor do the facts show that the working conditions were the result of Defendant's "illegal discriminatory acts," as is required. Given the totality of the circumstances, including Defendants' reasonable accommodation of Plaintiff's prayers and Defendants' undue hardship were it to accede to Plaintiff's requests, no inference of illegal discrimination arises.

### If Prima Facie Case, It's Rebutted

But even if Plaintiff makes a prima facie case of religious discrimination, Defendants have rebutted it by showing a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802–03. Plaintiff shows no evidence that Defendants' request for Plaintiff to stop praying in the lobby was motivated by religious animus, and the uncontested facts show that request was spurred by a desire to comply with the request from its building manager. And permitting Plaintiff to pray elsewhere in the office building would have caused Defendants undue hardship, as detailed above. Thus the burden returns to the Plaintiff to show that the Defendants' stated reasons are a pretext for discriminatory intent. *See Elmore v. Capstan,* 58 F.3d 525, 530 (10th Cir. 1995).

### No Evidence of Pretext

Plaintiff contends "the pretext in this case is the utter lack of evidence that plaintiff's prayer disrupted anyone." Dk. 37, p. 21. Plaintiff contends that any complaints from the building manager are hearsay, and that no written complaint is included in the record.

### No Written Complaints

The lack of any written complaint from the building manager or others is immaterial, since the record does not suggest that any written complaints were made. Admissible, competent evidence of the building manager's requirement that Plaintiff cease praying in the lobby has been presented through the testimony of Ms. Evers, a competent witness who received that complaint in her capacity as H.R Manager for Centrinex.

### Hearsay Objection

Plaintiff mentions, but does not argue, that the building manager's complaint is inadmissible hearsay. *See* Dk. 35, p. 21 (stating only that the complaint from Centrinex's landlord "is hearsay."). Accordingly, the court finds this objection to be waived. *See Therrien v. Target Corp.,* 617 F.3d 1242, 1252–53 (10th Cir. 2010) (appellant waived argument on appeal when it mentioned the issue only once in a footnote in its opening brief and footnote did not contain argument); *Utahns for Better Transp. v. U.S. Dep't of Transp.,* 305 F.3d 1152, 1169 (10th Cir. 2002) (one-sentence NEPA argument waived because not briefed adequately); *United States v.*

*Hardman,* 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

But even assuming that the hearsay objection is properly preserved, the Court finds the challenged statement to be admissible. The complaint from the building manager is not hearsay because it is not being offered for the truth of the matter asserted. Defendants are not using the building manager's statement to try to prove that Plaintiff's praying in the lobby disrupted other tenants or their visitors. Instead, Defendants are admitting the building manager's statement as evidence of Defendants' state of mind after receiving this statement, and to show the basis for Defendants' belief that it needed to ask Plaintiff to stop praying in the lobby. *See Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1434 (10th Cir. 1993) (statements offered to show an employer's state of mind in making an employment decision are generally not hearsay, as they are not asserted to prove the truth of the matters asserted); *See United States v. Lambinus,* 747 F.2d 592, 597 (10th Cir. 1984), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985) (statements offered for the effect on the listener are generally not hearsay).

### Inconsistent Complaints

Plaintiff also contends that inconsistencies about the alleged disruption show pretext. *See Turner v. Pub. Serv. Co. of Colo.,* 563 F.3d 1136, 1143 (10th Cir. 2009) ("A claim of pretext ... may be based on weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." (internal quotation marks omitted)). But in support of this assertion, Plaintiff offers only the following:

> Caughron and Evers claim that employees of Centrinex were complaining. Battaglia thought the complaints were that plaintiff was disrupting Centrinex employees somehow by praying right in front of their cubicles.

Dk. 37, p. 21. This fails to shows an inconsistency in the testimony.

Further, this summary of the testimony is not accurate. Battaglia testified that she thought the complaints were that Plaintiff had been praying "on the premises," "within the facility," and was "disrupting the employees," but the testimony does not reveal her belief that Plaintiff was praying right in front of anyone's cubicles. *See* Dk. 37, Exh. 2; Battaglia depo. pp 11-13. Nor does Plaintiff show any support in the record for stating that "Caughron and Evers claim that employees of Centrinex were complaining." Dk. 37, p. 21. No facts support that Evers so claimed, and Caughron's notes, cited as support for this proposition, state only that Plaintiff's praying in the lobby was "disruptive to the other employees," and "[t]here are other employees complaining." Dk. 37, Exh. 5. The record thus does not support Plaintiff's assertion that Defendants thought Centrinex employees were complaining about his noon prayers.

But even if the Court considered an inconsistency which Plaintiff has not argued, *i.e.*, that Caughron, Evers and Battaglia thought that Centrinex employees were complaining but the building manager reported only that non-Centrinex tenants, employees or visitors were complaining, this discrepancy is immaterial and insufficient to show pretext. This discrepancy casts no material doubt upon the veracity of the reason given to Plaintiff for not permitting him to conduct his noon prayers in the lobby – that the building manager had said his prayers were disrupting others.

### No Proof of Actual Disruption

Plaintiff also argues that Defendants cannot meet their burden to show that his prayers in the lobby actually disrupted anyone. But Defendants do not bear that burden. The issue on summary judgment is whether Defendants legitimately acted on the basis of the complaint they received about Plaintiff. Whether subsequently developed extrinsic evidence might cast doubt on the veracity of some of what the complainants said is not relevant to Defendant's nondiscriminatory motivation. *Sorbo v. United Parcel Service*, 432 F.3d 1169 (10th Cir. 2005) ("We have repeatedly held that the relevant inquiry in such cases concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts, as shown by evidence extrinsic to the employer's assessment, may have been otherwise."). See *Medley v. Polk Co.,* 260 F.3d 1202, 1207 (10th Cir. 2001); *Kendrick v. Penske Transp. Services, Inc.,*220 F.3d 1220, 1230–32 (10th Cir.

2000); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998); *Kendall v. Watkins,* 998 F.2d 848, 850-52 (10th Cir. 1993).

Defendants have shown they sincerely believed that Plaintiff's prayers in the lobby were disruptive, since it is undisputed that that is what the building manager reported to them. Plaintiff has presented no facts that raise an inference that no such report was ever made, or that Defendants did not believe the report from the building manager but merely used it as an excuse to get rid of Plaintiff because of his religion. Nor has Plaintiff shown any reason why Defendants should have disbelieved the building manager's statement or conducted further inquiry. Under the facts of this case, Defendants were motivated to take adverse action against the Plaintiff by the building manager's report of complaints, and cannot be liable under a disparate-treatment theory even assuming the building manager's report was incorrect. Because no material question of fact regarding pretext has been shown, summary judgment is warranted on Plaintiff's disparate treatment claim.

**V. Attorneys' Fees**

Defendants seek attorneys' fees under Title VII and Rule 11. Under Title VII, fees may be awarded in the Court's discretion to a prevailing defendant if the Court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct.

694, 54 L.Ed.2d 648 (1978) (interpreting 42 U.S.C. § 2000e–5(k)). But even claims that are dismissed for failure to state a claim are not automatically frivolous. *Jane L. v. Bangerter,* 61 F.3d 1505, 1513 (10th Cir. 1995). Here, the Court finds no evidence supporting Defendants' conclusion that Plaintiff's case warrants attorneys' fees. Similarly, Defendants have not shown that Rule 11 has been violated by the signing of the filed Complaint or that attorneys' fees are warranted as sanctions under that Rule.

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Dk. 35) is granted.

IT IS FURTHER ORDERED that Defendants' request for attorneys' fees is denied.

Dated this 20th day of November, 2013, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge